**Nursing Home Provider Agreements**

*Kane,* Attorney General, June 15, 1976 — We have been requested for an opinion as to whether Reorganization Plan No. 3 of 1975 effected a transfer from the Department of Public Welfare to the Department of Health of the function of the issuance of nursing home provider agreements in connection with the Federally-funded Medicaid program. It is our opinion, and you are advised, that the actual issuance of nursing home provider agreements under the Medicaid program was transferred to the Department of Health, while supervision of this function remains in the Department of Public Welfare. On June 23, 1975, Governor Milton J. Shapp submitted to the legislature Reorganization Plan No. 3 providing for the transfer, among other things, of certain responsibilities for nursing home licensing and certification from the Department of Public Welfare to the Department of Health. This was authorized by the Reorganization Act of 1955, Act of April 7, 1955, P.L. 23, 71 P.S. §750-1 et seq. The Governor's transmittal message to the legislature stated that he had determined, after investigation, that the proposed transfer "would enhance the efficient operations of government." The Governor further stated that the Department of Health was better equipped to handle these responsibilities: Journal of the Senate, Vol. 1, No. 36, 460 (1975); Journal of the House, Vol. 1, No. 52, 1656 (1975). Reorganization Plan No. 3 became effective on September 1, 1975, 71 P.S. §756.3.

Section 2 of the Reorganization Plan provides as follows:

"The functions, powers and duties of the Department of Public Welfare as set forth in Articles II, IV, IX, and X, act of June 13, 1967 (P.L. 31, No. 21), known as the 'Public Welfare Code,' with regard to the Social Security Act, insofar as it applies to skilled nursing homes 'and intermediate care nursing homes' provider agreement certification and issuance, *except those powers necessary for the Department of Public Welfare to retain its status as the Single State Agency* in compliance with the Social Security Act, are hereby transferred to the Department of Health." 71 P.S. §756-3 (Emphasis supplied).

This section transferred certain duties of the Department of Public Welfare in connection with Title XIX of the Social Security Act. Title XIX provides for the funding by the Federal government of the State-administered Medicaid program, a program providing for payment of medical expenses for the poor. Among the medical expenses paid by Medicaid are those for intermediate care and skilled nursing homes. To receive payment for services provided to a Medicaid beneficiary, a nursing home must be certified by the State that it meets the minimum eligibility standards and it must have a current contract with the State to provide Medicaid services. The contract to provide Medicaid services is called the "provider agreement."

The transfer effected by the Reorganization Plan was limited to all "functions, powers and duties of the Department of Public Welfare" as to "provider agreement certification and issuance except those powers necessary for the Department of Public

Welfare to retain its status as the Single State Agency in compliance with the Social Security Act . . ." Because of this language, it is necessary to determine what powers the Department of Public Welfare must retain in order to maintain its status as the single State agency.

The applicable section of the Social Security Act which sets forth the requirements a State must meet in order to receive Federal financial participation in its Medicaid program, contains the following provision:

"State plans for medical assistance—Contents

"(a) A State plan for medical assistance must —

"  .  .  .

"(5)  . . . provide for the establishment or designation of a single State agency *to administer or to supervise the administration* of the plan . . ." 42 U.S.C.A. §1396a, August 14, 1935, as amended, 79 Stat. 344 (Emphasis supplied.)

The regulation promulgated to supplement this provision provides:

"Section 205.100, *Single State Agency.*

"(a) *State Plan requirements.* A State plan under title . . . XIX of the Social Security Act must:

"(i) Provide for the establishment or designation of a single State agency with authority to *administer or supervise* the administration of the plan."

The statute, and the regulation make it clear that the single State agency may either administer or supervise the administration of the plan; that is, it may either perform the actual requirements of the program or it may delegate this to some other entity so long as it retains supervisory control over the delegated activities. This conclusion is confirmed not only by the plain meaning of the statute

and regulation, but also by subsection (b) of the regulation which details the standards for maintaining supervisory control when the single State agency delegated certain of the activities to other entities: 45 C.F.R. §205.100(b). In addition, this conclusion is supported by the legislative history of the statutory provision. Prior to the 1973 amendments to the Social Security Act, this section had provided that a "state plan for medical assistance . . . provide for the establishment or designation of a single State agency to administer the plan." Title XIX, §1902, as added July 30, 1965, P. L. 89-97, as amended, 42 U.S.C.A. §1396(a)(5), December 31, 1973, P. L. 93-233, 87 Stat. 960-963, 971, 972. In 1973, the provision was amended to provide for the single State agency to administer or supervise the administration of the plan: 42 U.S.C.A. §1396a(a)(5).

Further confirmation of this conclusion can be found in a Report on the Audit of the Medical Assistance Program administered by the State of Delaware, C.C.H. Medicare and Medicaid Guide #13,759.81. In that report, the Department of Health, Education and Welfare found that the failure of the Delaware Department of Public Welfare, the single State agency, to exercise supervisory control over the Delaware Blind Commission, to which it had delegated the actual provision of services under the Medicaid program, was a violation of the single State agency requirement. The violation was based upon the failure to exercise supervision, not upon the fact that there was a delegation of the carrying out of the various program activities.

Applying these principles to Reorganization Plan No. 3, it is our opinion that the plan transfers

to the Department of Health the actual operation of the nursing home program, while retaining in the Department of Public Welfare supervisory responsibilities, Actual operation of both issuance and certification is transferred to the Department of Health, while supervisory responsibility remains with the Welfare Department.

The most important consequence of the single State agency requirement is that there exists for Federal purposes, a clearly identifiable unit within the structure of the State government which must be accountable to the Federal agency. This permits the Federal agency, in order to discharge its responsibility, to know who is in a supervisory capacity to carry out the Federally assisted program. By Reorganization Plan No. 3, this concept has been retained.

In reaching our conclusion, we are not unmindful of the existence of several regulations that make reference to the execution of an agreement with the single State agency. See 45 C.F.R. §§249.10(B)(4)(i)(B), 249.10(b)(15)(i)(E), 249.33 (a)(1), 249.33(a)(2) and 249.33(a)(6). Since these provisions do not deal with the criteria for a single State agency but rather deal with other aspects of the Medicaid program, it is evident that the references to an agreement with the single State agency are descriptive rather than operative; that is, they should not be construed as *requiring* that the single State agency perform the administrative function of executing the provider agreements. Consequently, we find that these indirect references were not intended to modify the clear meaning of the statute and regulation dealing with the duties of a single State agency which permit a separation of the supervisory and administrative functions.

Having determined that Reorganization Plan No. 3 transfers to the Health Department the actual operation of the nursing home provider agreement certification and issuance function, it is appropriate to give some guidance as to the functions retained by the Welfare Department. The pertinent regulation, 45 C.F.R. §25.100(b), contains the conditions for implementing the single State agency requirement. Pursuant to this regulation, the Department of Public Welfare's supervisory responsibilities in the nursing home area will continue to include the authority for exercising administrative discretion in the supervision of the issuance and certification process and the authority to set the policies, rules and regulations for these procedures. Accordingly, the Department of Public Welfare and the Department of Health should promptly develop procedures for meeting these requirements for supervisory control by the Department of Public Welfare.

The pertinent regulations, 45 C.F.R. §205.100 (a)(ii), also require that the Attorney General certify that the single State agency has the authority to administer or supervise the administration of the plan. This letter will constitute the requisite certification to the effect that the Department of Public Welfare continues to have the authority as required by 42 U.S.C.A. §1396a(a)(5) and the regulation, 45 C.F.R. §205.100, and that Reorganization Plan No. 3, as interpreted by this opinion, is consistent with these requirements.

We are aware that the Governor submitted on September 17, 1975, a request for a waiver of the single State agency requirement pursuant to the Intergovernmental Cooperation Act of 1968, 42 U.S.C.A. §§4201-4214, October 16, 1968, 82 Stat. 1098-1101. However, we have subsequently been

▬▬▬▬▬  ▬▬▬

advised that the waiver request has been suspended and that the Department of Public Welfare is now prepared to exercise supervisory control over the program.

In conclusion, it is our opinion that the administration of the provider agreement issuance function for the Medicaid program has been transferred to the Department of Health by Reorganization Plan No. 3, and that the supervision thereof is a function retained by the Department of Public Welfare.*

---

*We have been advised that the actual transfer to the Health Department of the function of issuance of provider agreements has not yet occurred pending this opinion. By reason of the conclusion reached herein, the transfer of activities should be implemented in the near future.